**AMERICAN EMPLOYERS' INSURANCE COMPANY, Boston, Massachusetts. Plaintiff, v. TOLEDO SERVICE PARKING COMPANY, Defendant.**

Common Pleas Court, Lucas County.

No. 170458.   Decided October 21, 1955.

## OPINION

By RUTHERFORD, J.

In this action the plaintiff as subrogee of the lessor seeks indemnity from the lessee, based upon the indemnity provisions contained in the lease.

On February 25th, 1944, at about 8:00 P. M. Helen Wenner Dodson, Marilyn Ann Riehl, Vance A. Dodson, Jr., and Richard Byers had parked their car in a lot at the corner of Huron and Jackson Streets and were walking east along the public sidewalk on the north side of Jackson Street, Toledo, Ohio, on their way to the Rivoli Theatre. Shortly before they reached the point where Jackson and Superior Streets intersect and at a point where the sidewalk was abutted on the north by property owned by The New England Trust Company, Trustee, and leased to the Toledo Service Parking, Inc., the sidewalk collapsed and the four pedestrians were precipitated into an areaway underneath. Helen Wenner Dodson, Vance H. Dodson, Jr., and Paul L. Riehl as Administrator of the Estate of Marilyn Ann Riehl, deceased, each brought separate actions in the Court of Common Pleas, Lucas County, naming The New England Trust Company and the Toledo Service Parking Co. as defendants. Richard Byers made no claim.

The case of Helen Wenner Dodson v. The New England Trust Company and the Toledo Service Parking Company was tried to a Jury in

the Common Pleas Court of Lucas County. The jury returned a verdict for the Plaintiff against The New England Trust Company (owner and lessor) in the sum of Fifteen Thousand ($15,000.00) Dollars but returned no verdict against the Toledo Service Parking Co. (lessee). An appeal was taken by The New England Trust Company but the judgment was affirmed as reported in the **Dodson v. The New England Trust Co., 78 Oh Ap 503.** Thereafter a motion for certification was duly filed, but was denied by the Supreme Court of Ohio.

The judgment plus interest and costs was paid by the plaintiff in this case, American Employers' Insurance Co., which also made settlement of the cases brought by Vance H. Dodson, Jr., and Paul L. Riehl as Administrator of the estate of Marilyn Ann Riehl, deceased.

By stipulation of the parties, it is agreed that the American Employers' Insurance Co. as insurance carrier of the New England Trust Co. (owner and lessor) under the terms of its policy was compelled to, and did, pay to each of the individuals the amounts as set forth in plaintiff's petition, the total of said amounts being $25,805.07; that plaintiff, by virtue of the provisions of its policy became subrogated to all rights held by The New England Trust Co., Trustee, under its lease to the defendant, Toledo Service Parking Co.; and that in event of a finding against the defendant in this case the recovery should be in the amount of $25,805.07 as prayed for in the prayer of the petition plus proper interest and costs.

Both Plaintiff and Defendant have expressly waived trial by jury and this cause is submitted to the Court upon the pleadings and the evidence, which evidence consists of agreed stipulation of facts, agreed exhibits, and includes therein the transcript of the testimony and proceedings in the Common Pleas Court in cause No. 163073, Helen Wenner Dodson v. The New England Trust Co., Trustee, and Toledo Service Parking Co., including the charge of the Trial Court in said case. Said transcript consists of 447 pages.

Also in evidence in this cause is the entire lease entered into between The New England Trust Co., Trustee, and Toledo Service Parking, Inc., on September 4, 1942. Those provisions of the lease which related to contractual right of indemnity as between the lessor and lessee were properly excluded from evidence in the case brought by Helen Wenner Dodson. Her action was in tort and the indemnity provisions of the lease as between the lessor and lessee were not in issue and could not relieve either the lessor or lessee of its liability in tort, if any, to Helen Wenner Dodson, a third party.

There has been no prior determination of the contractual obligation, if any, of the lessee to the lessor, based upon the indemnity clauses of the lease, upon which contractual provisions Plaintiff, as subrogee of the lessor, has brought this action.

The pertinent provisions of the lease which was prepared by the lessor acting through its agent, The Geo. P. Crosbey Co. are:

THIS LEASE ENTERED INTO THIS 4TH DAY OF SEPTEMBER, 1942, by and between The New England Trust Co., Trustee under the will of Robinson D. Locke, hereinafter designated lessor, and Toledo Service Parking Co., an Ohio Corporation, hereinafter designated lessee,

WITNESSETH:

That in consideration of the rents, covenants and conditions hereinafter set forth, on the part of said lessee to be paid, performed and observed, said Lessor does hereby demise, let and lease unto said lessee, the following described premises, situated in the City of Toledo, County of Lucas, and State of Ohio, to-wit:

The unimproved premises known as 501-503 Superior Street, being further described as Lot No. 1036 and the southwesterly 25 feet of Lot 1037 Vistula Division, in the City of Toledo, Lucas County, Ohio, reserving, however, unto said Lessor and to tenants of other parts of said building, or of the adjoining premises owned by said Lessor, such parts of the lot of land upon which said building is located not occupied thereby.

Said leased premises are to be used for automobile parking purposes only and for no other purpose without the written consent of the lessor.

Said lessee does hereby convenant and agree with said lessor, his, her or its successors and assigns, as follows, to-wit:

1. That said lessee will and hereby does accept said premises in the condition they may be at the commencement of the term thereof, subject to all defects therein, whether concealed or otherwise, and whether known or unknown to said Lessor, and to release and forever discharge said Lessor from any and all damages of every kind and nature that may be in any way occasioned thereby, and at all times to indemnify and save said Lessor said premises and the improvements thereon harmless from all liens and all liability in any way arising out of the use or condition of said premises or of the improvements thereon.

8. That said lessee will not obstruct the sidewalk in front or along the side of said premises by displaying thereon any goods, ware or merchandise, without the written consent of said Lessor.

9. That said Lessee will at all times keep the sidewalks along said premises free and clear of obstructions to travel thereon, and of snow and ice.

10. That said Lessee will use and keep said premises in a careful, safe and proper manner, and will carefully conduct and guard all fires that may be conducted thereon.

12. That said Lessee will keep said premises, and all parts thereof, and all fixtures, machinery and apparatus, in good repair and in such condition that no damage will occur to any person by reason thereof

13. That said Lessee will fully comply with and obey all laws, ordinances, rules, regulations and requirements of all regularly constituted authorities, in any way affecting said premises or the use thereof, or this lease.

18. That said Lessee will permit said Lessor and the agents of said Lessor to enter upon said premises at all reasonable times, to examine the condition thereof.

22. That said Lessee will keep said premises in such repair and condition as may be required by the Board of Health, or other City, State or Federal authorities, free of all cost to said Lessor.

23. That said Lessee shall and will save Lessor harmless from any

and all claims and demands of every kind and nature, in favor of any person, whether by way of damages or otherwise, arising from the failure on the part of said Lessee to perform and observe any covenant or condition hereof.

27. That said Lessee shall and will pay all charges, fees and assessments made, imposed or exacted by the City of Toledo, or its public authorities for inspection, use, permit to use and rental of the so-called subspace under any sidewalks, streets, or alleys in connection with said demised premises.

The premises described are at the Northwest corner of Jackson Street and Superior Street. On the South they are abutted by Jackson Street, on which street the sidewalk collapsed, and on the East by Superior Street.

In 1884 there was constructed on the premises a three-story brick building, with basement and with sub-basement under the sidewalk on Jackson Street. The supporting wall of the building was on the south lot line so as to abut the North line of Jackson Street. Then an areaway, about 3½ feet wide, was provided between the main wall of the building, and a wall parallel thereto, which together with another wall along the curb line of Jackson Street, supported the sidewalk over the subspace. The sidewalk consisted of stone slabs about 8½ feet long, 4 feet wide and 10 inches thick, supported at each end by one of the walls.

There were openings as means of ingress and egress from the basement into this areaway and from it into the sub-space under the sidewalk; and this space could be and was used as additional basement space by the occupants of the building.

In 1898, Robinson Locke acquired title to the property by deed. Upon his death, title passed to Trustees under the will of Robinson Locke, and in 1936 to The New England Trust Company, successor Trustee under the will of Robinson Locke. The New England Trust Company as successor Trustee continued to hold the legal title to this real estate upon which the sidewalk, causing plaintiffs injury, abutted and still held said title on February 25th, 1944, when a section of the sidewalk collapsed. Subsequent to acquiring title in 1936, The New England Trust Co. sent its agent to inspect the premises and thereafter in 1937, The New England Trust Company had said building razed, filled up the basement and leveled off the lot, but did not fill the space under the walk on Jackson Street. The unimproved lot was then leased to the Toledo Service Parking Co., as hereinbefore set forth, for the purpose of open air automobile parking; and Toledo Service Parking Co. was in possession of the lot at the time the sidewalk collapsed.

From the evidence, the Court finds that there was a defect in the slab which collapsed, which defect was due to some foreign material or deposit through the center of the stone slab; that this defect caused the lower portion, by action of the elements, to separate from the upper, over a period of years, and break or scale off, and caused the broken parts to fall into the subspace; and that the stone was originally about 10 inches thick, but had from scaling off become much less, and at the time it broke was less than one-half of its original strength. This defect

in the stone which collapsed could have in the exercise of ordinary care been detected from an inspection of its edges before installation. This defect could not be detected from view of the top surface; however, the deterioration of the stone was apparent, from the subspace underneath, many years before the collapse, and would have in the exercise of ordinary care been apparent upon inspection before the building was razed in 1937.

There is no evidence that the defendant lessee was advised of the existence of the subspace by the lessor, and there was nothing to direct attention to existence of any subspace underneath the sidewalk to either the lessee or the injured parties except three manholes, none of which were in the slab that broke.

The entrance and exit to the parking lot was on Superior Street. As shown by Exhibit No. 3 there were parking meters at the curb line of Jackson Street opposite which the slab collapsed and a wire fence along the parking lot at the North line of Jackson Street. The lessee was not using this portion of the sidewalk as a means of ingress to or egress from the premises, and those who were injured were neither invitees nor licensees of the defendant, but were exercising their right to use the sidewalk of a public street, on their way to a theatre.

It is the Court's finding that the Toledo Service Parking Inc., the lessee, was not negligent. It did not create the condition; did not use this portion of the sidewalk in connection with the operation of the parking lot, and did not have either actual or constructive notice of the existing defect. On the other hand, the owner and lessor to whose rights the plaintiff has been subrogated, was negligent since the potentially dangerous condition of the sidewalk, in the exercise of ordinary care, should have been observed before the building was razed in 1937; however, in spite of the existing dangerous condition which should then have been observed from the areaway, no repairs were made; but the building basement, from which access to the areaway had been gained, was filled in, without filling the areaway.

Not only was the dangerous condition a continuing condition, but in 1937, as a result of the building being razed, it became a hidden condition. This finding of negligence on the part of the lessor is in accord with the finding of the jury in the case of Helen Wenner Dodson v. The New England Trust Co., Trustee; and this plaintiff cannot now attack that finding made against its insured without which there would have been no liability on the policy and resulting right of subrogation against the lessee.

Under these facts, what is the contractual liability, if any, of the lessee to indemnify the subrogee of the lessor for the loss proximately caused by negligence of the Lessor?

The premises as described in the lease are the unimproved premises consisting of Lot No. 1036 and the southwesterly 25 feet of Lot No. 1037.

Sections 1, 10, 12, 13, 22 each make specific reference to "said premises" being the unimproved premises described, which, as shown by the plat, extend only to the street line and do not include any portion of the street or sidewalk which is a part of the street.

The covenants as to the sidewalks are contained in Section 8 and 9 of the Lease as hereinbefore set forth, and there is no evidence that the Lessee breached either of these covenants relating to sidewalks.

Section 27 of the lease refers to subspace under the sidewalks. In 1921 the City of Toledo passed an ordinance requiring a permit by anyone constructing a subspace under sidewalks, or by the user of a subspace previously constructed. The Lessee has not violated this section because he did not construct the subspace, nor has he ever been a user of it, since it was rendered inaccessible by the Lessor before the lease was entered into and its utility destroyed when the building was razed in 1937.

Another section of the ordinance provides that any subspace must be rebuilt or repaired, upon proper notice from the Director of Public Safety, but no notice was ever given.

The lease was a made over form, which had originally been drafted for a building lease. Before signing, several of its provisions were marked out. However, even assuming that Section 27 is binding upon the parties because it was not omitted, the Court finds no breach thereof by the lessee.

Section 23 refers to Sections 10, 12, 13 and 22, which as hereinbefore stated refer only to "said premises" as described in the lease, being the vacant lots as they extend only to the street lines.

Section 23 also refers to Section 1, and this section is somewhat broader in that it refers to "all liability in any way arising out of the use or condition of said premises." Under this provision arises the question of liability of the lessee as a result of its use of the premises, but in this case it need not be decided as to what would be the liability of the lessee, if in connection with operating the parking lot he were using the sidewalk as a means of ingress or egress, or if the injury had been to one of its invitees or licensees.

In this case the lessee did not use the Jackson Street sidewalk, which was separated from the parking lot by a fence and the persons injured were neither going to nor from the lot.

The lease was prepared by the lessor and there is nothing in its provisions to indicate any intent and understanding of the parties by which it can be construed to be sufficiently wide in scope, to cover a pre-existing dangerous condition of a sidewalk subspace, which subspace was not leased to or used by the lessee, the existence of which was not disclosed to the lessee, and which subspace and its condition would not be discovered by the lessee in the exercise of ordinary care; but, which dangerous condition was permitted to continue through negligence of the lessor, resulting in a loss which did not arise in any way from the operation or use of the leased premises.

As between the lessor and the lessee, when the indemnity provisions as in this lease refer only to "said premises," which are described as the unimproved lots, which the City Plat shows to extend only to the street line, and to all liability in any way arising out of the use, or condition, of said premises or the improvements thereon, it is the Court's finding: That there is no right of indemnity in the Lessor, for an amount recovered against the Lessor, due solely to the lessor's negligence which

was the cause of the collapse of the sidewalk at a point where the sidewalk was not used in connection with the operation of the leased premises and when the persons injured were neither invitees nor licensees of the lessee, but were persons exercising their right to be on the public sidewalk on their way to the theatre.

Because the loss for which indemnity is asked, falls outside the scope of the covenants of indemnity contained in the lease, the finding is in favor of the defendant, Toledo Service Parking, Inc.

A Journal Entry may be submitted accordingly with costs taxed to the Plaintiff.